### THE CONFIDENCE.

(Circuit Court of Appeals, Second Circuit. December 9, 1912.)

No. 49.

SHIPPING (§ 16*)—OFFENSES AGAINST NAVIGATION LAWS—VIOLATION OF COLLISION RULES.

Under Inland Navigation Rules, Act June 7, 1897, c. 4, § 4, 30 Stat. 103 (U. S. Comp. St. 1901, p. 2885), which provides that "every vessel that shall be navigated without complying with the provisions of this act" shall be liable to a penalty of $200, a vessel which is navigated in viola-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the rules prescribed therein for preventing collisions is subject to the penalty, although she was seaworthy and properly manned and equipped as required by the act, and the fault was that of the master, who is also subject to a penalty therefor under section 3.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 30–44; Dec. Dig. § 16.*]

Appeal from the District Court of the United States for the Southern District of New York; Van Vechten Veeder, Judge.

Libel by the United States against the steam tug Confidence; the Southern Pacific Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

This cause comes here upon appeal from a final decree which adjudged that the United States recover a penalty against the steam tug Confidence under Act June 7, 1897, c. 4, 30 Stat. 103 (U. S. Comp. St. 1901, p. 2885), entitled "An act to adopt regulations for preventing collisions upon certain harbors, rivers and inland waters of the United States." The relevant sections of the act are:

"Sec. 3. That every pilot, engineer, mate, or master of any steam vessel, and every master or mate of any barge or canal boat, who neglects or refuses to observe the provisions of this act, or the regulations established in pursuance of the preceding section, shall be liable to a penalty of fifty dollars, and for all damages sustained by any passenger in his person or baggage by such neglect or refusal: Provided, that nothing herein shall relieve any vessel, owner or corporation from any liability incurred by reason of such neglect or refusal.

"Sec. 4. That every vessel that shall be navigated without complying with the provisions of this act shall be liable to a penalty of two hundred dollars, one-half to go to the informer, for which sum the vessel so navigated shall be liable and may be seized and proceeded against by action in any District Court of the United States having jurisdiction of the offense."

The facts are stipulated. The Confidence and steam lighter the Martha Stevens were navigating in the harbor of New York. The two boats approached each other obliquely, the lighter being on the tug's starboard side. It does not appear what signals, if any, were blown. A collision ensued which was caused in part, at least, by the failure of the master of the tug to observe the provisions of the act of June 7, 1897, in that she failed to keep out of the way of the Martha Stevens, and failed to slacken her speed or stop or reverse in time to prevent a collision. At the time of the collision the tug was a first-class boat, thoroughly seaworthy and was in all respects equipped in accordance with the provisions of the act. Her master was duly licensed and had always borne a good reputation as a competent master and pilot.

G. M. Buck, of New York City, for appellant.

Henry A. Wise, U. S. Atty., A. S. Pratt, Asst. U. S. Atty., and Frank M. Roosa, all of New York City, for the United States.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The contention of the appellant is that the act should be so construed as to impose a penalty on the master for the master's fault and on the vessel only for the owner's fault. As he states it in the brief:

"Where the owner employs a competent master, and in all respects equips his vessel in compliance with the statute, the vessel has complied with the act; and if the vessel is later navigated, while so equipped, the act imposes no penalty on the vessel for the master's failure to observe the statutory provisions in his handling of the boat."

In other words, it is contended that the act should be construed as if it read:

"Every vessel which shall engage in navigation, without having complied with this act shall be liable," etc.

But in the opinion of a majority of this court such a construction strains the plain language of the statute, which certainly is not obscure. It provides specifically (in sections 1 and 2) that a vessel, when navigating, shall move thus and so, shall show such and such lights, and shall give such and such signals. Certainly a vessel, which, when navigating, fails to move, or show lights, or give signals as required, may most truthfully and accurately be described as being "navigated without complying with the provisions of the act."

Taking the words in their ordinary and natural meaning, without any refinement or distortion, they make the vessel as well as the master responsible in penalty for failure to obey such rules of navigation as the statute enumerates. The burden is on the person contending for a restricted meaning to show some good ground for the conclusion that Congress did not mean precisely what it said. We do not find anything persuasive in the arguments advanced to sustain the narrow construction. We see no distinction between the two phrases "observe the provisions" and "comply with the provisions." Nor do we attach any weight to the circumstance that the master is penalized (while the vessel is not) for failure to observe the pilot rules, other than those enumerated in the statute. Nor do we see why it should be assumed that Congress did not intend to make the owner liable for the fault of his employé. He is already liable in damages for such faults when there is a disastrous collision.

The object of this statute was to *prevent* collisions, by punishing disobedience of the requirements of the act whenever it occurred and was discovered, without waiting for disaster to follow. A master may be competent, and may hold a certificate, and yet be repeatedly reckless and disregardful of prescribed rules. Our experience has shown how frequent this is. Congress may well have believed that the best way to make masters comply with the rules of navigation, which they are too prone to modify, would be to punish the owner when the master violated them. To do so would tend to make the owner vigilant and watchful of his employé; not content with general competence and a certificate, but constantly seeking to advise himself, perhaps through others of the crew, as to how the master handled the vessel, and prompt to discharge a master whose habitual conduct was such as to expose the vessel to repeated penalties.

But we do not think it necessary to advance arguments in favor of a construction which seems so plainly to be the natural meaning of common words. The burden is on the other side, and we do not find the arguments advanced by it persuasive to a restricted construction of this section.

The decree includes interest, which the government now concedes should not be included. So much of the recovery being abandoned, the decree, as thus modified, is affirmed.